

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| Juan Armas, | ) Docket No. 2017-06-0405 |
|       Employee, | ) |
| v. | ) |
| Lucas Enamorado, | ) State File No. 15759-2017 |
|       Employer, | ) |
| And | ) |
| Travelers, | ) Judge Kenneth M. Switzer |
|       Carrier. | ) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

Juan Armas filed a Request for Expedited Hearing, and the undersigned conducted a hearing on August 15, 2017. Mr. Armas sought benefits for a May 4, 2016 workplace injury. Lucas Enamorado, the alleged employer, denied responsibility. He argued that Mr. Armas appears on the Workers' Compensation Exemption Registry or in the alternative that Mr. Armas is an independent contractor. For the reasons set forth below, the Court holds Mr. Armas was ineligible for Registry placement and that he was Mr. Enamorado's employee. Thus, Mr. Armas suffered a compensable injury under the Workers' Compensation Law and is entitled to medical benefits.[1]

### History of Claim

Mr. Armas and Mr. Enamorado agreed that on May 4, 2016, Mr. Armas became injured while working on a home construction project when a foreign object flew into his eye. Mr. Armas sought emergency care at Vanderbilt. Providers diagnosed a corneal laceration, requiring immediate surgical repair and removal of the foreign body. He

---

[1] The Dispute Certification Notice additionally lists as issues Mr. Armas' entitlement to temporary and permanent disability benefits. However, Mr. Armas offered no argument in support of his claim for temporary benefits; rather, he said that the expedited hearing was "about the medical bills." Further, no medical provider assigned a permanent impairment rating to date, so the issue of Mr. Armas' eligibility for permanent disability benefits is not ripe for adjudication. Thus, the Court limits its focus at this time to the issues of compensability and medical benefits.

1

received follow-up care over the next several months. Mr. Armas, whose principal language is Spanish, testified that the Vanderbilt providers recommended a second surgery but declined to treat him further due to outstanding medical bills.

Mr. Armas testified that he incurred substantial medical bills for the injury, although he failed to introduce proof of the amounts at the hearing.[2] He paid $40 out of his own pocket and $100 from Mr. Enamorado toward the bills. Further, and to his credit, Mr. Enamorado voluntarily paid $15,800 in cash to help Mr. Armas support his family. Later, in July 2016, the parties entered into a written agreement that their pastor facilitated in an effort to avoid litigation. The agreement provided for voluntary payments by Mr. Enamorado to Mr. Armas. It also stated that Mr. Armas became injured while "under [Mr. Enamorado's] direction at work," and that Mr. Enamorado "hired [Mr. Armas] verbally."

The parties detailed their relationship further by explaining it began in fall 2015, when they discussed the possibility of Mr. Armas working for Mr. Enamorado. Mr. Enamorado is a home builder who also constructs fences and decks. Mr. Armas believed he was seeking employment as his "assistant." He previously worked in landscaping under other employers for approximately seven years but wanted to learn more about carpentry. Mr. Armas said Mr. Enamorado treated his workers well, which also attracted him to the opportunity. Mr. Enamorado carries workers' compensation coverage only on himself. He explained that, around the time of hire, he told Mr. Armas that he must either obtain workers' compensation insurance or apply for an exemption on the Registry for 2016. According to Mr. Enamorado, Mr. Armas had "some basic" carpentry skills when he started, and he assisted others. Mr. Armas worked continually except when he left briefly to work elsewhere when the work slowed down. He later returned to work for Mr. Enamorado.

Mr. Armas apparently worked for Mr. Enamorado for several months without workers' compensation coverage. Then, on February 24, 2016, Mr. Enamorado met with United Solutions, an insurance firm. Its principal, Troy Walton, writes workers' compensation and other insurance policies and offers tax advice and bookkeeping services. Mr. Walton testified that he previously offered general business advice and sold workers' compensation insurance to Mr. Enamorado when Mr. Enamorado was starting his business. When starting his business, Mr. Enamorado stated an intention to work only with "1099 independent contractor[s]." Mr. Walton testified that he told Mr. Enamorado at that time:

> If a person does not have their own workers' comp policy or if a person at
> the bare minimum does not have a workers' comp exemption, then that

---

[2] The Court sustained Mr. Enamorado's objection to the admissibility of these bills, arguing that they were hearsay and they did not state a causal relationship to the work injury.

person, insurance-wise, would not be considered an independent contractor. So, if he does plan on giving any 1099s within the next policy period, then he needs to advise those persons that don't have exemptions that they possibly might want to get some.

On February 24, Mr. Enamorado, presumably acting on Mr. Walton's advice but outside his presence, telephoned Mr. Armas from United's office to discuss the effect of Mr. Armas declining to purchase a workers' compensation policy on himself but opting instead for the Registry. Mr. Enamorado turned on his phone's speaker, and United Solutions staff, Ana Lopez and Adilene Padilla, overheard and may have participated in the conversation between Mr. Armas and Mr. Enamorado. However, testimony about this conversation varied slightly among the witnesses. Ms. Lopez, Ms. Padilla and Mr. Enamorado each spoke about a "form" in Spanish explaining the supposed consequences of applying for the Registry, but no one introduced this document into evidence. Mr. Armas testified that he did not consent to anyone signing the form on his behalf; Mr. Enamorado, Ms. Lopez and Ms. Padilla stated that he did. Regardless, the form, signed or unsigned, was not introduced into evidence; rather, the parties agreed to admission of an "Initial Workers' Compensation Exemption Registration Acknowledgement."

This form, which does not contain Mr. Armas' signature, required a payment of $100. Although a credit card number appears on the form, no one acknowledged whose card it was. Mr. Armas specifically stated he did not pay the required fee, and Mr. Enamorado offered no contradictory evidence. At some point during or immediately following the conversation, Mr. Armas texted information for the application to Mr. Enamorado. Mr. Enamorado retrieved a photo containing Mr. Armas' Individual Taxpayer Identification Number, which he provided at an earlier date, presumably around the date of hire.[3] Ms. Lopez used all of this information to complete the application electronically.

The resulting Acknowledgement lists Mr. Armas as an "active" Registry member as of February 24. It lists the "business name" as "Juan Carlos Armas" and assigns a "CSP," or "construction services provider" registration number. The Acknowledgement lists no licensures for the business from the state, county or city. Mr. Enamorado offered no proof that Mr. Armas operated a business performing carpentry work.

The parties offered varying accounts of Mr. Armas' general working conditions. They agreed he worked Monday through Friday; Mr. Enamorado said the hours varied, while Mr. Armas stated the days began at 7:00 a.m. and the end of the workdays varied

---

[3] IRS Form W-7 allows for creation of an "ITIN," or "Individual Taxpayer Identification Number," for persons who "are required for federal tax purposes to have a U.S. taxpayer identification number but who don't have and aren't eligible to get a social security number." INTERNAL REVENUE SERVICE, https://www.irs.gov/pub/irs-pdf/iw7.pdf (last visited Aug. 22, 2017).

3

depending on the availability of materials or a job's completion, etc. Mr. Armas testified that he earned $620 in gross weekly wages at an hourly rate of $13, paid in cash. Mr. Armas daily brought his own tools to the worksite, and he worked under the direction of "supervisors." Mr. Armas offered the affidavit of Ermes Garcia, a co-worker, who said Mr. Enamorado was the "boss" at their jobsites.

## Findings of Fact and Conclusions of Law

At this expedited hearing, Mr. Armas must offer sufficient evidence from which the Court can determine he is "likely to prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The Court finds Mr. Armas received an on-the-job injury and that the dispute involves two defenses: 1) Mr. Armas' presence on the Registry and 2) his status as an alleged independent contractor.

### *Exemption Registry Defense*

The Court first considers the legal effect of Mr. Armas' presence on the Exemption Registry. On this point, the parties offered a great deal of testimony and argument regarding Mr. Armas applying for the Registry and whether he did so voluntarily. However, the Court finds the disputed circumstances of the application itself and the voluntary nature of it are incidental to the dispositive issue: whether Mr. Armas was a proper candidate for the Registry in the first place. The Court holds that he was not.

Since the Legislature created the Registry in 2010, no appellate court has offered an interpretation. Therefore, the Court looks to the plain language of the statute itself.

The Act creating the Registry amended the definition of "employee" to exclude "construction services provider[s], as defined in § 50-6-901," if the construction services provider is listed on the Registry and is "working in the service of the *business entity* through which the provider obtained such an exemption[.]" (Emphasis added); *see also* Tenn. Code Ann. § 50-6-102(E)(i) (2016). Further, Tennessee Code Annotated section 50-6-902(a) requires construction services providers to carry workers' compensation insurance regardless of the number of employees, but section 50-6-902(b)(1) allows an exemption for construction services providers working on non-commercial projects and listed on the Registry. Section 50-6-903(a) lists criteria for application to the Registry. Specifically, applicants may be officers of corporations, members of limited liability companies, partners, sole proprietors or owners of any of these business entities. Importantly, the statute does not include an "employee" on the list of possible candidates for the Registry, suggesting to the Court that lawmakers intended only for business

4

owners to qualify for the exemption. If employees were allowed an exemption, then the requirement of coverage set forth in section 902 that all construction services providers provide coverage for their employees would be thwarted.

Here, the Registry Acknowledgment lists a "business name" of "Juan Carlos Armas," suggesting a sole proprietorship. Section 50-6-901(17) defines a "sole proprietor" as "one (1) person who owns a form of business in which that person owns all of the assets of such business." Considering this definition, the Court holds that Mr. Armas was not working in affiliation with any business entity as an officer or partner and, in particular, he was not a "sole proprietor." Rather, he was Mr. Enamorado's employee. Mr. Armas credibly testified to seven years of landscape work before starting work for Mr. Enamorado to gain carpentry skills. He clearly considered himself an employee. Despite lengthy, thorough cross-examination, Mr. Enamorado never elicited testimony from Mr. Armas to suggest that he owns or operates a business. Further, the only "assets" of any purported business are Mr. Armas' tools, likely of minimal value and customarily in all construction workers' possession. The Court rejects the Exemption Registry defense and holds the submission of the Registry application was an attempt to avoid the application of the Workers' Compensation Law to Mr. Armas.

*Independent Contractor Defense*

In the alternative, Mr. Enamorado argued that Mr. Armas was an independent contractor or subcontractor rather than an employee. This argument is also unpersuasive.

To recover workers' compensation benefits, a claimant must be an employee and not an independent contractor. *Peters v. Mitchell d/b/a A Clean Connection, LLC, et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 7, at *7 (Feb. 8, 2016). The statute provides that, to determine whether an individual is an "employee," "subcontractor" or "independent contractor," a Court shall consider the following factors:

(a) The right to control the conduct of the work;
(b) The right of termination;
(c) The method of payment;
(d) The freedom to select and hire helpers;
(e) The furnishing of tools and equipment;
(f) Self-scheduling of working hours; and
(g) The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2016). Of these factors, appellate courts have characterized the right to control the conduct of the work as the most significant in determining whether an injured worker is an employee or independent contractor. *Peters, supra,* at *9.

5

Here, of the applicable factors, Mr. Armas testified without contradiction that Mr. Enamorado or supervisors controlled the conduct of the work. Along these lines, the post-injury agreement states that Mr. Armas became injured under Mr. Enamorado's "direction," implying that Mr. Enamorado controlled the worksite. Mr. Enamorado paid Mr. Armas an hourly wage, suggestive of an employee rather than an independent contractor. While Mr. Armas brought his own tools to the worksite, as previously noted, workers in his field customarily do so. While the parties' testimony varied about the hours, the Court accredits Mr. Armas' account and finds Mr. Armas followed a work schedule that Mr. Enamorado or the supervisors set. Finally, although Mr. Armas left briefly to work elsewhere, that was due to a lack of work for Mr. Enamorado and not because he was free to offer his services to other entities. In sum, the Court finds the evidence supports a holding that Mr. Armas was Mr. Enamorado's employee rather than an independent contractor.

Therefore, as a matter of law, Mr. Armas has come forward with sufficient evidence from which this Court concludes, at this time, that he is likely to prevail at a hearing on the merits regarding the compensability of his claim.

*Medical Benefits*

Since Mr. Armas falls within the Workers' Compensation Law, the Court turns to his requested relief.

Mr. Armas' stated focus at the expedited hearing was mostly "about the bills." Tennessee Code Annotated section 50-6-204(a)(1)(A) provides that employers must provide medical and surgical treatment made reasonably necessary by a workplace accident free of charge to the injured employee. Ordinarily, this would entitle Mr. Armas to an order that Mr. Enamorado pay all outstanding sums for past treatment. However, this Court cannot do so on this record because it declined to admit Mr. Armas' bills into evidence. *See Osborne v. Beacon Transport, LLC, et al.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 49, at *9-10 (Sept. 27, 2016). This holding does not prevent Mr. Armas from presenting additional evidence on this issue at a later hearing.

Mr. Armas also testified, without contradiction, that he needs surgery for the work injury. Section 50-6-204(a)(1)(A) requires that Mr. Enamorado provide ongoing medical benefits. Thus, the Court grants Mr. Armas' request for further medical benefits. Given the course of treatment to date, the Court finds it appropriate that the approved providers be those at Vanderbilt.

6

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Enamorado shall provide Mr. Armas with medical treatment with Vanderbilt (Dr. Janice Law) designated as the authorized treating provider(s). Vanderbilt or Mr. Armas shall furnish medical bills to Mr. Enamorado for prompt payment.

2. Mr. Armas' request for past medical benefits, specifically payment for past medical bills, is denied at this time.

3. This matter is set for a Scheduling Hearing on **October 16, 2017, at 10:00** a.m. Central. The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without the parties' participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED the 22nd day of August, 2017.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Fabricio Sosa
2. Affidavit of Ermes Garcia
3. FROI
4. Initial Workers' Compensation Exemption Registration Acknowledgement and Filing Information
5. Denial email
6. Medical records from Vanderbilt
7. Acta de Mutuo Acuerdo (Act of Mutual Agreement)
8. Memo of payments to Mr. Armas

Technical record:
1. Petition for Benefit Determination
2. Employer's Position Statement
3. Dispute Certification Notice
4. Request for Expedited Hearing
5. Witness and Exhibit List of Employer/Carrier
6. Subpoenas/Return on Service: Troy Walton, Adilene Padilla, Ana Lopez
7. Employer's Brief
8. Notice of Retention of Interpreter

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __22nd__ day of August, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Juan Armas, Employee | X | | | 5308 Pennsylvania Ave., Nashville TN 37209 |
| Ritchie Pigue, Steven Parman, Employer's Counsel | | | X | rpigue@tpmblaw.com; steve@watkinsmcneilly.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov